Let's begin with United States v. Nunez. Mr. Zaloba. Yes. Good afternoon, your honors. My name is Edward Zaloba, and I represent Martin Nunez. The lower court denied Mr. Nunez his petition for rid of Coram Nobis on the basis that he found the new prejudice. I believe that the decision was incorrect. Obviously, I believe there was as a result of the ineffective assistance of his counsel. Here, Mr. Nunez was very concerned about his recently obtained citizenship and went to the attorney's office and gave him a copy of the certificate of naturalization, told him about his connections to the United States, that he has three children living with his mother of the two children. His parents were here, and he's living with them, and all his siblings are here, and that he's gainfully employed as and basically the sole supporter of the family. Mr. Garzon, who spoke only Spanish to him, except for when in front of the court. So after hearing this, told him that he had no immigration concerns. You're a citizen. He repeatedly informed him of this, despite Mr. Nunez continuously asking, you know, do I have any concerns? And this advice, erroneous advice, induced Mr. Nunez to take a plea and plead guilty to the first two counts of the indictment, those counts preceding his naturalization, rather than taking a plea to the other. Now, was he prejudiced? This was an affirmative misrepresentation of immigration consequences, which induced him to plead. Now, here we have prejudice, I believe. He never at all was told the facts, so his decision-making process was totally impaired. He never made, the attorney never offered to try to plead guilty to the other counts which occurred after the naturalization, or ever sought any other type of negotiation, because he erroneously believed that. Here, Lee and Kovacs would apply, but recently this court, well, before that, this plea was definitely not answered intelligently, knowingly, or voluntarily. Recently, there's a panel of this court deciding the United States versus Rodriguez, that the defendant was denied effective assistance of counsel, where the advice was erroneous, ignored the possibility of denaturalization. Here, the decision is consistent with the prevailing norms for the last 20-plus years, and the ABA standards, which require an attorney to advise clients concerning any immigration consequences, and also that we have an affirmative duty to investigate and advise the possible immigration consequences, and a duty to advise on possible crimes. Here, denaturalization could be a crime. The granting of this writ would provide relief because of the federal rules of evidence under 410 would preclude the minutes, the plea, the transcripts from coming in in this denaturalization proceedings, which is against them, fending against them at this time. I don't know if I, okay, the three minutes is up. Yes, your three minutes have expired. All right. Any questions? I have a question or two. This is Judge Pooler. Counsel, the district court thought that your client would not have been able to negotiate a plea that allowed him to avoid allocuting to pre-naturalization criminal conduct. I think that's wrong because the dates on which the conduct occurred were not an element of the crime, and that's critical to the plea. Do you agree? I would not. I would state that there would be a problem if they pled guilty to the dates before. I would agree to a certain extent, but not. I think the attorney should have definitely sought an alternative plea with pleading guilty to the two crimes that happened after he was naturalized, although they may not be required specific dates. There is an allocution there, which the court did indicate and had my client admit to offenses occurring before his naturalization, and I would much rather go face denaturalization without admissions being used against me, my own admissions being used against me. Do you think the government might have agreed to a plea that only covered post-naturalization behavior? Were they aware of naturalization? I believe they may or should have been. I would think that the attorney should have made some type of negotiation. I believe he was operating under false belief. The attorney made absolutely no attempt to negotiate either a letter of recommendation, a conditional plea to not seek naturalization, or to allocute to the last two counts. None of that was done. There was no negotiations because this attorney was operating under false pretenses, a false belief in the law. Under false assumptions. The district court also thought that Eunice might not have been able to negotiate such a plea because there was a tape recording, but that recording was never tested in court, and he never had an opportunity to challenge that tape recording. Isn't that correct? That is correct. That's all my questions. Thank you. Judge Bianco. Thank you, Judge Convance. Mr. Zoloba, I guess I'm confused about something here. The reason I think you have an issue establishing prejudice here is that even though he pled to that particular count that covered a longer time frame, his actual allocution, he was not required to say that he committed any drug sales prior to the naturalization date. So he was not prejudiced because, in essence, even though the lawyer didn't negotiate that he did not have to admit to something prior to January 11th, in fact, he didn't admit to anything, right? He admitted to nothing that was prior to his naturalization, right? That would be incorrect, Judge. He pled in page seven of the plea minutes. The court asked him, were you involved in a conspiracy that existed from November 2007 to 2008, and he said yes. In that particular time frame, he did not admit. Let me just get to the fundamental point. Judge Block, who has the denaturalization proceeding, issued an opinion. When the government moved to dismiss based upon his plea and based upon his allocution and based upon the PSR, Judge Block ruled that none of those things established that, in fact, he had committed a drug sale prior to his naturalization. I would respectfully disagree. Judge Block ruled that they hadn't made out their burden and that it was evidence by a clear and unequivocal and convention. Here he cited that- The plea and the indictment, the indictment allegations mean nothing, and so it doesn't matter that he pled guilty to a count that included that time frame. He said his allocution was vague enough that it didn't establish, he didn't admit that he had done anything prior to the naturalization, and he said the failure to deduct to the PSR can't be used against him and that the government has to prove it otherwise. As Judge Brewer, I think, noted, I think the government, based upon Judge Block's ruling, is going to have to play the recordings and establish that he sold the drugs based upon something other than what he said it is guilty play, right? No, and Judge Block said there had to be more specificity when you're moving to motion to dismiss the pleadings. At that point in the proceedings, you have to have the high standard. Later on, there still is the existence of the court's examination saying that conspiracy existed from November 2007 to 2008, and he did admit that the defendant did say that he did something at the beginning of last year, or the beginning of the last year of 2007, or the end of last year. That would come in in the trial of the denaturalization plea. Judge Block was upset with the, well, not upset, but he ruled because the indictment would say on or about the PSR. I think you're completely misreading Judge Block's decision. I think he's clearly saying the government's going to have to prove that he committed a drug crime prior to the naturalization from something other than his guilty plea or the conviction itself. So, by virtue of the way he allocated, he actually got the benefit of what he's now seeking, which is that he got to plead and get the benefit of the plea without having it foreclose him making the government prove that he dealt drugs prior to the naturalization. The last question I have is, what makes you think the government, as Judge Poole touched on this, what makes you think this lawyer could have negotiated that the government would have put in the plea agreement that if he pleads guilty, they will not seek to denaturalize him? You have to show a likelihood of that. Are you aware of any case, any case where the U.S. Attorney's Office has agreed in a plea agreement not to seek denaturalization, and the other part of it would be they would have to bind another U.S. Attorney's Office. It would be the Southern District binding that the Eastern District would not seek to denaturalize him. What's your basis for believing that that would have been remotely possible? I think it very easily could be done where he could have pled guilty to items to the last due count that occurred after the naturalization. I don't think that would be a correct alternative plea. But assuming I believe that that had no difference for the reasons already indicated, that it didn't matter which county pled to because he got to allocute in a way that he didn't admit to anything, then you're seem to be making a separate argument that he would have been able to get the government to agree not to pursue denaturalization at all. I'm suggesting you, I don't think you could point to any case ever where the plea agreement... You may be correct. That may be a stretch. But by pleading guilty to the last due count, it will cause them possibly to refile and possibly rethink their situation here. As I said, he did still make that he pled guilty. There's two parts in page 7 of the minutes and page 13 of the minutes basically stating that he did commit a crime in a critical period here, both the conspiracy existing from November 2000, that's prior to January 11th, and that he committed a crime at the end of last year, that's 2007 or the beginning of this year. That's good enough to be used against him in his denaturalization proceedings. I would not want to have that be used against me. All right. All right. Thank you. Judge Cabranes, I have one more question before we go on. In Rodriguez, on which both sides rely, the panel remanded for a fuller for making a better record. Is that what you're asking for here? I think that would be appropriate, Judge. My client has a 10th grade education. His lawyer only spoke to him in Spanish and it surely was prejudiced. Something could have been done. When your lawyer operates under false understanding of what the law is, you are prejudiced. I don't think there's any doubt to that. Like I said, this plea was not entered intelligently, knowingly, or voluntarily. I think that there should be a further examination of what the facts are and develop the record. Yes, I do agree with you, Your Honor. Thank you. Mr. Zaloba, this is Judge Cabranes. I have a couple of questions, mostly of a semi-clerical variety to make sure I understand the situation. Who exactly is Hector Melo, M-E-L-O? I think that was a co-defendant. I don't know why that name appears there. I think it was a co-defendant instead. Okay, because he is listed on the appellate caption, but not on the district court caption. Do we know any other connection to this particular issue? We're from Mr. Melo? No, I don't know anything about him. No, I have no idea. Let me ask you another question. The Sixth Amendment right to effective assistance of counsel is what we're talking about, of course. Did you convey to the attorney in question any notice that you were intending to question his effectiveness in the representation of Mr. Nunez? I called him and he said he had no memory. He doesn't remember the case and he was rather abrupt about that. I see. So you gave him an opportunity to surface in these proceedings as it were. Yes, I did. He didn't want to do that. I think he wanted to ignore the whole issue. Yeah, you didn't send any letter or anything of that sort and you didn't raise that. You didn't put it on the record before Judge Block, right? No, I didn't represent him before Judge Block. Mr. Bower did. I took over the case at a later stage in that proceeding. I didn't write the motion. Mr. Bower did. I wasn't there for the denial. I just reviewed what I've seen as the court's ruling. I didn't handle that part. I came in at the end and got a stay. All right. Now, you would agree, would you not, that the right to effective assistance of counsel doesn't extend to advice regarding so-called collateral consequences of a criminal proceeding? Is that a fair statement? I would not believe so. I think that's an incorrect statement. I think we have Padilla telling us for 15 years prior to Padilla that the norms and the prevailing norms require that a person be advised of any risk of possible of deportation. Obviously, denaturalization is a risk of deportation. I don't believe the collateral distinction applies because most of the cases that the government has cited involves the court's duty under the Fifth Amendment and not under the Sixth Amendment. They cite the cases of Young and McGinnis v. Wilson, and those cases involve entirely the Fifth Amendment and what the court should have done. I don't believe the Supreme Court wants to have a categorical rule, and I don't think it applies. In fact, the prevailing norms require attorneys to act with an affirmative duty to seek out and advise clients of their protections to naturalize citizens versus non-citizens. That's why I think Rodriguez is correct. Also, in Rodriguez, in the oral argument, the government did concede finally to the court. The court asked him, wouldn't a competent attorney have to advise him of denaturalization consequences? In fact, the attorney did say that for the government. I think his name was Mr. Nunez. What in the record can you point to that would confirm what I take to be your view that denaturalization was a direct, immediate, or largely automatic result of the guilty plea entered by Mr. Nunez? Well, Judge, whether you could say it's a direct or immediate result, I think that's the making a distinction in a way the government's trying to do without the difference. Because the government has to take one step to denaturalize and to deport, does not diminish counsel's duty to warn the client and advise the client properly about deportation and immigration consequences. I think there's no valid basis to make a distinction there whatsoever. All right. Do either of my colleagues have any further questions for Mr. Zaloba? I don't. Thank you. All right. So we'll hear from Mr. Rohrabach. Mr. Zaloba. Good afternoon. Two minutes. Go ahead. Good afternoon, Your Honors. This is Andrew extraordinary relief of vacator of his 2009 conviction. And he's not for three independent reasons. First, granting the writ would not remedy any legal consequences because the denaturalization case against the defendant can and will proceed even if the conviction is vacated. Second, the defendant was not prejudiced because even if he had been advised of the risk that he would be subject to denaturalization, on the facts of this case, he could not have negotiated a more and would not have gone to trial. And finally, the Sixth Amendment right to counsel does not extend to collateral consequences and denaturalization is just such a consequence. I'd like to begin with the regressibility issue because under the facts of this case, whether or not the court vacates the defendant's conviction, the denaturalization case can continue and therefore no legal consequences would be remedied by granting the writ. The denaturalization complaint against the defendant has two bases. One is that he made a willful misrepresentation in the course of his denaturalization. On form N-445 on the day of his, he took the oath of citizenship, the defendant had to affirm that he had not committed any crime or offense for which he had not been arrested since his naturalization interview. That was false and it can be demonstrated by evidence showing that merely one day before the date of his naturalization, the defendant sold 35 grams of heroin to a government confidential source. Second, the denaturalization complaint alleges that the defendant's naturalization was illegally procured because he was not eligible for naturalization because he could not show that he had good moral character. And even without the conviction, the government can argue that the defendant lacks good moral character because he sold heroin during the statutory period. So the denaturalization proceeding will not terminate on either ground if this court vacates the conviction and the denaturalization is therefore not a consequence of the conviction. Now the defendant says that his admission of guilt makes it virtually certain that the government will prevail. And that's wrong and brings us to the prejudice issue. Because in this case, the judge in the denaturalization action, Judge Block, has already denied judgment on the pleadings notwithstanding the conviction, the plea, the indictment, and the pre-sentence investigation report. The reason is that those things do not bind the defendant to any admission that he engaged in any criminal conduct prior to the date of his naturalization. So even with this conviction, the government bears a heavy burden of proof to establish that the defendant engaged in his criminal conduct at some point during the statutory period, or that he engaged in a willful misrepresentation in the course of the denaturalization process. That is the exact plea. This is the exact situation that the defendant would have wanted had he obtained the plea that he now described. I see my three minutes have expired. I'd be happy to answer any of the court's questions. Hooler, any questions? I have a couple of questions. If we granted the plea and vacated the conviction because of ineffective assistance of counsel, where would Mr. Yunez be in terms of his other legal problems? I think the government would have, since the conviction would be vacated, the government would have the opportunity to retry him. But as relevant here, the denaturalization case would continue. That case is in discovery now that the motion for judgment on the pleadings has been denied. So presumably, if this court vacated the conviction, that say would be lifted and discovery would proceed. But isn't that case dependent on him having committed a crime before his date of naturalization? Isn't that part of the facts of the denaturalization proceeding? If this conviction was vacated, wouldn't those facts evaporate? Those facts would not evaporate, Your Honor, because the defendant would still have engaged in the criminal conduct prior to his date of naturalization, and the government would have an opportunity in the denaturalization action to prove as much. So while the conviction provides... Excuse me. I'm sorry I interrupted. Go on. So while the conviction provides good evidence that the defendant committed a crime, although I'll note that in this case, the conviction does not provide evidence that the defendant committed the crime before the date of his naturalization, as Judge Block has found. Go on. I apologize. So the conviction provides evidence useful against the defendant, but if the conviction were vacated, the government could still proceed in the denaturalization case, relying on the underlying evidence in this case to show that the defendant committed a willful misrepresentation in the course of the denaturalization process, or that he did not possess good moral character because he engaged in the sale of heroin during the statutory period. Would that depend on the tape recordings, or how would the government proceed to prove that he engaged in a behavior injurious to his naturalization claim? How would they prove that? The government would rely on the underlying evidence in this case, such as the recording that Your Honor mentioned earlier, as well as as it's developed in the course. Excuse me, counsel. That recording has never been contested because he took a plea. It was never tested in court whether it was accurate or fair. Isn't that correct? That is correct, Your Honor, and the defendant would have the opportunity to contest it in the denaturalization action if the government introduces it against him there. And I would just say also that as any civil action in this case is in discovery, my understanding is that discovery would proceed. So the government would seek depositions and interrogatories to try to develop a record that could be used to prove that the defendant engaged in these acts prior to the date of his naturalization. And so while the conviction is very useful evidence for the government, it does not by itself establish that the defendant engaged conduct prior to his engaged in this controlled substance offense prior to the date of his naturalization, nor is it necessary in order for the government to prove either of the two bases of naturalization. Counsel, was the government aware of Padilla at the time they drafted this plea? I believe not, Your Honor. As I recall, this plea was in 2008, and I think Padilla is a 2010 case. I'm not sure. That's why I asked. Yeah, I think you're... Yes, that's correct. Padilla was a 2010 decision, so they were not aware of... Padilla had not been decided by the Supreme Court at the time of the plea. Thank you. I have no further questions. Judge Bianco? Yes, thank you. So to roll back, it sounds like on the issue of Judge Block's decision and the back and forth with Mr. Zolo, but it sounds like you read the decision the way I read it, which is that you are not going to be able to simply rely on the conviction or the allocution to establish that he sold drugs prior to his naturalization, right? That is exactly how the conviction... Affirm the decision below, the conviction stands. There would have to be a bench trial after discovery where the government would have to prove that he sold drugs prior to that date, and this recording that you have referred to, you would have to play that report, introduce that recording on January 10th, the day before his naturalization, and he would be able to contest whether or not, in fact, that was a heroin sale or not, right? Isn't that what's going to happen? Yes. Yes, though I'm a little hesitant because I don't want to sort of make a representation about exactly what that trial would look like if this court affirmed that the government might seek to depose the defendant and try to elicit an admission from him using the record in a separate definition. Ultimately, I wouldn't suggest it has to play out that way, but ultimately, if he wanted to, if it came down to that January 10th recording, he's going to get the possibility to contest that, notwithstanding that he pled guilty to this indictment. It was counting the indictment, right? That is correct, Your Honor. He could take the position that his criminal conduct occurred entirely after the date of his naturalization, as he did before Judge Block in the motion for judgment on the pleadings, and the government will bear the burden by clear, unequivocal, and convincing evidence to prove that the defendant committed one of the two crimes prior to naturalization. All right. All right. Thank you. All right. Mr. Zaloba, you've reserved some time. Yes. First of all, Judge Block did not find that he did not commit a crime prior to naturalization. Not at all. Judge Block said the people didn't meet the heavy burden. In fact, there are two admissions that still exist that will be used against them if they go forward and the denaturalizations proceed if the court does not vacate this plea. That belief is not there. The court emphasized that when you make a motion to dismiss a judgment, seeking a judgment and dismissing just on the pleadings, that you have to be clear and unequivocal and convincing, and that by citing the indictment, which says on or about, that's not sufficient when you make a motion to dismiss on the pleadings. And that's what the problem was. And yes, there were some vagaries to the date, but there are two clear admissions that exist still prior, which the defendant admitted to a conspiracy, like I said, and he also admitted to a shell beginning of the year at the end of last year. So these two things, although were not found to be enough for a motion to dismiss on the pleadings because of the heavy burden, they surely will come in at his trial, and they are prejudicial. The trial of the denaturalization thing. If this court grants this or else sends it back for a remand, that would be the foundation. If it was granted, the foundation for their case would be surely shaken. They may have to consider a new complaint and various other things, but that is the position, and that is the true reading of the decision by Judge Block. There's no such thing that he said they did not find any committed crime before. No, people didn't. They made a motion and they didn't make out the burden, and that's what happened in that part of the case. Also, I would state that although the people state that denaturalization is different, I don't find it to be different, and I don't find their arguments persuasive as to the government did state. I haven't heard. I don't know if the government heard the tapes, but there's a conspiracy that's supposed to happen. Here, he's admitting to a conspiracy in the tapes, so there is relief that could be granted, be forthcoming if this court does find that the police should be vacated because of the affirmative misrepresentations. Also, one must not consider—my client may have considered a leak, a Hail Mary past here. I mean, here, he's not even told anything with reference to immigration by his attorney, who he put great trust in, and he has a 10th grade education. He's not told anything, but when he finds out later on after he does his time, four years, also completes his supervision, he has four more children. One of them suffers from autism. He's 14 years old, still needs help training, being stressed, and he has a second grade reading level. Surely, my client, if he knew this at the time, definitely would have considered possibly a leak, a Hail Mary, and that should be considered by this court because to just look at it like the lower court did as to the evidence or the possible strength of the case is not the true test. The true test would be those that were put forth on the callback and leak. That did not occur here. The client was kept completely in the blind. Judge Pooler, any questions for Mr. Nunez? I have one short question. Counsel, you cite Rodriguez to us as does the other side, and in that case, the panel noted her strong ties to the United States. You will make the same case in Mr. Nunez's favor. Is that correct? Yes. Mr. Nunez has been here since the age of 11. He spent 16 years here before his arrest. As I said, he has a carpenter job in the union. He told his employer, would you hire me back after I do my time? In fact, his employer did hire him back. He has four children. His mother and father did live here at the time. His mother now has serious issues. He's the sole supporter of his whole family. I think that the government, in this case, if the court does grant it or sends it back for reconsideration, or to develop the record, the government may figure out that there's going to be a great more harm and trauma that is done to many people than what will be gained by deportation here. I don't believe Mr. Nunez ever had a true advocate on his behalf, fighting for him on his behalf. No type of negotiation. Affirmative misrepresentation should never have occurred. This is what induced him to flee. It clearly induced him to flee. This erroneous advice, he felt immune from any type of circumstances that could have happened. This was his attorney. I don't believe we should allow the defendant to suffer the consequences. There surely is a remedy here. I think the Coram Nobis is exactly the remedy that should be granted. Thank you. Bianco, any questions? No, thank you. All right. We'll reserve decision in 20-1692, United States versus Nunez. We'll turn to the next case.